Jeremiah M. Hudson, ISB No. 8364
Christopher F. Brown, ISB No. 9328
Angela D. Perkins, ISB No. 10113
FISHER RAINEY HUDSON
950 W. Bannock St., Ste. 630
Boise, ID 83702
Telephone: (208) 345-7000
Facsimile: (208) 514-1900
jeremiah@frhtriallawyers.com
chris@frhtriallawyers.com
angie@frhtriallawyers.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JORGE GONZALES on behalf of his minor child A.G., TODD MERRELL on behalf of his minor child A.M.; MANUEL MORALES and VERONICA MORALES on behalf of their minor child Z.M.; HENRY MUNOZ and MISTY MUNOZ on behalf of their minor child I.M.; ERASMO SALAZAR and ELLEN SALAZAR on behalf of their minor children C.S. and S.S.; and ROBERT SANCHEZ and TIFFINY SANCHEZ on behalf of their minor child I.S.; SILVIA OCHOA on behalf of her minor child D.O.; SONIA RAMIREZ on behalf of her minor child V.R., | Case No.:  4:18-cv-92 |
| Plaintiffs, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs. | |
| BURLEY HIGH SCHOOL; CASSIA JOINT SCHOOL DISTRICT 151; GALEN SMYER in his official and individual capacity; SANDRA MILLER in her official and individual capacity; LEVI POWER in his official and individual capacity; and DOES I-X, | |
| Defendants. | |

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

COMES NOW the above-named Plaintiffs, by and through their counsel of record, and hereby complains and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the federal civil rights propounded herein pursuant to 28 U.S.C. §§ 1331 and 1343.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants are located in, and all incidents, events and occurrences giving rise to this action took place in, the City of Burley, Idaho.

## PARTIES

3.      Plaintiff Jorge Gonzales is an individual and a resident of the State of Idaho.

4.      Plaintiff A.G. is the minor child of Plaintiff Jorge Gonzales, a resident of the State of Idaho, and a sophomore at Burley High School.  A.G. began her second year on the Burley High School cheer team during the summer of 2017.

5.      Plaintiff Todd Merrell is an individual and a resident of the State of Utah.

6.      Plaintiff A.M. is the minor child of Plaintiff Todd Merrell, a resident of the State of Idaho, and, at all relevant times was a junior at Burley High School. A.M. began her third year on the Burley High School cheer team during the summer of 2017.

7.      Plaintiffs Manuel and Veronica Morales are individuals and residents of the State of Idaho.

8.      Plaintiff Z.M. is the minor child of Plaintiffs Manuel and Veronica Morales, a resident of the State of Idaho, and a senior at Burley High School. Z.M. began her fourth year on the Burley High School cheer team during the summer of 2017.

9.     Plaintiffs Henry and Misty Munoz are individuals and residents of the State of Idaho.

10.     Plaintiff I.M. is the minor child of Plaintiffs Henry and Misty Munoz, a resident of the State of Idaho, and a sophomore at Burley High School.  I.M. began her second year on the Burley High School cheer team during the summer of 2017.

11.     Plaintiffs Erasmo and Ellen Salazar are individuals and residents of the State of Idaho.

12.     Plaintiff C.S. is the minor child of Plaintiffs Erasmo and Ellen Salazar, a resident of the State of Idaho, and a freshman at Burley High School. C.S. began her first year on the Burley High School cheer team during the summer of 2017.

13.     Plaintiff S.S. is the minor child of Plaintiffs Erasmo and Ellen Salazar, a resident of the State of Idaho, and a sophomore at Burley High School.  S.S. began her second year on the Burley High School cheer team during the summer of 2017.

14.     Plaintiffs Robert and Tiffiny Sanchez are individuals and residents of the State of Idaho.

15.     Plaintiff I.S. is the minor child of Plaintiffs Robert and Tiffiny Sanchez, a resident of the State of Idaho, and a sophomore at Burley High School. I.S. began her second year on the Burley High School cheer team during the summer of 2017.

16.     Plaintiff Sylvia Ochoa is an individual and a resident of the State of Idaho.

17.     Plaintiff D.O. is the minor child of Plaintiff Sylvia Ochoa, a resident of the State of Idaho, and a senior at Burley High School. D.O. began her fourth year on the Burley High School cheer team during the summer of 2017.

18.     Plaintiff Sonia Ramirez is an individual and a resident of the State of Idaho.

19.     Plaintiff V.R. is the minor child of Plaintiff Sonia Ramirez, a resident of the State of Idaho, and a senior at Burley High School. S.R. began her fourth year on the Burley High School cheer team during the summer of 2017.

20.     The Cassia County Joint School District No. 151 (the "School District") is a political subdivision and school district of the State of Idaho.  The school district runs Burley High School.

21.     Defendant Burley High School ("BHS") is a local governmental entity in Cassia County, Idaho.

22.     Defendant Superintendent Galen Smyer ("Superintendent Smyer") is the Superintendent of the Cassia County Joint School District No. 151.

23.     Defendant Vice Superintendent Sandra Miller ("Vice Superintendent Miller") is Vice Superintendent of Cassia County Joint School District No. 151.

24.     Defendant Principal Levi Power ("Principal Power") is the Principal of BHS.

25.     Plaintiffs do not know the true names, but are informed and believe, and on that basis allege, that the Defendants sued herein as Does I through X are in some manner legally culpable for the damages suffered by the Plaintiffs.  On such information and belief, Plaintiffs allege that the list of Doe Defendants I-X includes officers, agents and employees of BHS and the School District involved in the decision to remove Plaintiffs from the cheer team on or around October 7, 2017.

## GENERAL ALLEGATIONS

26.     The BHS cheer team won state championships during the 2015-2016 and 2016-2017 school years under head coach Heidi Smith.  Eight on the nine plaintiffs were on at least one of the state championship teams.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

27.     Following Coach Smith's resignation, BHS hired Laine Mansfield (a/k/a Laine Harmon, hereafter "Mansfield") as the head coach of its cheer team beginning in the 2017-18 school year.

28.     Mansfield's prior experience as a cheer coach involved less than one-year as an assistant junior high cheer coach.

29.     In April of 2017, Mansfield conducted tryouts for the 2017-18 cheer team.

30.     Shortly thereafter, Mansfield's temperament, fairness, judgment, and ability to safely coach the team began to concern plaintiffs.

31.     Mansfield inappropriately used her position as the head coach in an effort to control those persons with whom team members associated.

32.     Specifically, Victoria Aragon, who had been on the BHS cheer team for three years and was a member of two of BHS's state championship cheer teams, did not make the team for her senior year.  Mansfield prohibited plaintiffs from communicating with, associating with, or otherwise talking about Aragon while at cheerleading practice or in the presence of Mansfield. Mansfield verbally reprimanded plaintiffs she observed communicating with or associating with Aragon.

33.     Mansfield demonstrated an inexcusable lack of basic knowledge of the safety requirements that cheer coaches are required to observe.  For example, "flyers"—cheerleaders who are lifted or thrown into the air (an extremely dangerous task that can lead to paralysis or fatalities)—were continually being dropped on the floor.

34.     Most freshman cheerleaders, many of whom Mansfield coached when she was an assistant at the junior high, did not seem to understand the significance of these "flyer" drops.

35.     Mansfield failed to respond to this safety concern and, instead, when safety concerns were brought to her attention, Mansfield blamed plaintiffs stating that the duty to train the younger cheerleaders rested on plaintiffs, not the coach.

36.     Mansfield demonstrated a lack of fairness by selectively enforcing attendance policies.

37.     With respect to plaintiffs, Mansfield enforced mandatory attendance for practices and events during August and September of 2017, and made no exceptions for conflicting school-related activities, family functions, or any other non-emergency scheduling conflict.  Under Mansfield's policy (as applied to plaintiffs), a single missed practice would result in plaintiffs being excluded from important games and events during the week the practice was missed.

38.     For example, plaintiff A.G. requested an accommodation to attend a school-related function that she was obligated to attend long before the cheer team practice schedule had been created, and Mansfield threatened to punish A.G. by not allowing her to participate in the next cheerleading event if she missed practice for her other school-related obligation.

39.     Conversely, with respect to her own daughter and the daughter of another coach (also a team member), Mansfield rescheduled the entire team's practice to allow for them to attend a driver's education course.

40.     Mansfield also excused her daughter from failing to attend a football game in order to attend a wedding.

41.     Mansfield herself would cancel, reschedule and, on occasion, fail to show up for practice if her cheer team coaching responsibilities conflicted with her personal schedule.

42.     Mansfield's temperament was unfit for her position as the head cheer coach as she regularly degraded plaintiffs and their cheerleading abilities during practices. These comments went beyond the critical motivation that some coaches direct at their athletes.

43.     On September 23, 2017 some of plaintiffs' parents set up a meeting with Vice Superintendent Miller, Principal Power, BHS Vice Principal Kit Kanekoa, and BHS Athletic Director Gordon Kerbs to discuss concerns about Mansfield's coaching techniques.   The Administration would not let the team members attend the meeting and refused to listen to their concerns about Mansfield's behavior.

44.     On information and belief, Mansfield was informed of the September 23, 2017 meeting.

45.     Following the September 23, 2017 meeting, Mansfield increased the nature and frequency of the degrading and derogatory comments she directed at plaintiffs.

46.     In an effort to be heard on the matter, on Friday, September 29, 2017, at approximately 8:10 a.m., fourteen (14) BHS cheerleaders (nine of whom are named herein as plaintiffs) engaged in a peaceful "sit in" protest in the BHS gym at the end of one of their before-school practices.

47.     On information and belief, BHS Administration was aware that plaintiffs intended to engage in the sit-in prior to the sit-in occurring.

48.     Plaintiffs' sit-in lasted approximately two (2) minutes, at which time the BHS Administration came in to address the protesting cheerleaders.

49.     That same day, BHS Vice Principals Kit Kanekoa and Andrew Wray informed plaintiffs that their participation in the sit-in would result in a one-week suspension from the cheer team.

50.     The following Monday, October 2, 2017, Principal Power gave each plaintiff a written notice of their one-week suspension. The notices advised plaintiffs that they could not attend cheer team practices, games, or other events as a BHS Cheerleader during the suspension. Plaintiffs were required to go to the BHS media center during their regularly scheduled cheer class, which was on Tuesdays and Thursdays beginning at 8:20 a.m.

51.     On Thursday, October 5, 2017, the BHS Principals' Office gave each plaintiff a list of additional punishments to which the plaintiffs and their parents were required to agree in order for plaintiffs to be allowed back on the cheer team.

52.     The October 5, 2017 letter included, among other things, the following conditions:

- Added two weeks to their existing one-week suspension, for a total of three weeks.  During the extended suspension period, plaintiffs were required to attend all practices and games but, at games, plaintiffs were required to sit in warm up gear with the coaches and not participate.

- Plaintiffs were required to apologize to the coaches and other team members.

- Plaintiffs were required to complete a 4-hour service project.

- Plaintiffs were required to write an essay reflecting on the event and develop a "team building" idea to present to the coaches.

- Plaintiffs were prohibited from speaking freely about their experience with the coaching staff or on the cheer team in general.

- Plaintiffs and their parents were required to sign the letter that imposed additional punishments or face dismissal from the team.

53.     On or around October 6, 2017, plaintiffs and their parents returned the signed the stipulations to the office of the principals.  However, plaintiffs' parents also attached a letter stating that they wished to reserve their right to participate in the district's grievance process.

COMPLAINT AND DEMAND FOR JURY TRIAL - 8

54.     In response to their parents' request to reserve the right to participate in the district's grievance process, plaintiffs were kicked of the team.  The letter kicking plaintiffs off the team read as follows:

> It is clear to district level administration that while the stipulation agreements were returned the presence of the additional page or addendum suggests a continued conflict on the part of the cheer team, the individual student and parents with the coach and school administration. Such an expression is interpreted to be a desire to utilize the grievance process as opposed to the solution propounded by the administration. It is the belief of the school superintendent and the assistant superintendent the school and the cheer team would best be served by revoking the membership of [Plaintiff] on the Burley High School cheer team effective Monday, October 9, 2017 at 8:00 a.m. The dismissal from the Burley High School Cheer Team will be effective for the 2017-2018 school year. This decision, while not easy is based upon all the findings and information state above and weighed against the constitutional and state requirements concerning education services, the education process, academic discipline and learning, the need to avoid disruption of the education process along with statutory requirements to provide support and professional development for teachers.

55.     The team members who did not reserve their right to engage in the school district's grievance process were not kicked off the team.

56.     After kicking plaintiffs off the cheer team, defendants required that plaintiffs transfer out of their first period cheer class and into alternative classes.  Defendants attempted to, and in some cases did, prevent plaintiffs from transferring into classes with other plaintiffs.

57.     Defendants also punished plaintiff A.M. by removing her from her position as an office aid in the principals' office during second period because A.M. had allegedly "lost the trust" of BHS principals and teachers as a result of her participation in the sit-in.

## CAUSE OF ACTION

### FIRST CLAIM FOR RELIEF
FIRST AMENDMENT RETALIATION re. SIT IN
(42 U.S.C. § 1983 – U.S. Const. Amend. I)
[Against Superintendent Smyer, Assistant Superintendent Miller, Principal Power, Does I-X]

58.     Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as if fully set forth herein.

59.     Superintendent Smyer, Assistant Superintendent Miller, Principal Power, and Does I-X are persons as that term is used under 42 U.S.C. § 1983.

60.     Superintendent Smyer, Assistant Superintendent Miller, and Principal Power, in their individual capacity and as the final decision-making authority on behalf of BHS and the School District, were acting under the color of law when engaging in the actions set forth in paragraphs 43 through 57 above.

61.     Does I-X, in their individual capacity, were acting under the color of law when engaging in the actions set forth in paragraphs 43 through 57 above.

62.     The acts described in paragraphs 43 through 57 above by Superintendent Smyer, Assistant Superintendent Miller, Principal Power, and Does I-X, deprived Plaintiffs of their right to be free from retaliation for exercising their First Amendment rights under the United States Constitution.

63.     The peaceful sit-in in which plaintiffs engaged in a constitutionally protected activity that did not involve substantial disruption of or material interference with school activities.

64.     Suspending plaintiffs from the cheer team for one-week, and thereafter extending the suspension to three weeks and addition additional punishments, for engaging in a peaceful sit-in would chill a person of ordinary firmness from continuing to engage in the constitutionally protected activity.

65.     The plaintiffs' act of participating in a peaceful sit-in to bring attention to Mansfield's coaching practices was a substantial or motivating factor in the defendants' decision to punish and suspend plaintiffs from the cheer team.

COMPLAINT AND DEMAND FOR JURY TRIAL - 10

66.     Plaintiffs have suffered and will continue to suffer harm, including emotional distress and psychological damage and damage to their character and standing in the community, as a direct and proximate result of the defendants' acts, omissions, and deliberate indifference to their rights.

67.     Plaintiffs' damages from such conduct included, but are not necessarily limited to, emotional distress and reputational harm, in an amount to be determined at trial.

68.     Additionally, due to the wanton and outrageous conduct of defendants, and each of them, Plaintiffs asks that punitive damages be imposed against defendants Superintendent Smyer, Assistant Superintendent Miller, Principal Power, and Does I-X and the in amounts to be determined by the enlightened conscience of the jury.

**SECOND CLAIM FOR RELIEF**
FIRST AMENDMENT RETALIATION re. RESERVATION OF RIGHT TO FOLLOW GRIEVANCE PROCEDURES
(42 U.S.C. § 1983 – U.S. Const. Amend. I)
[Against Superintendent Smyer, Assistant Superintendent Miller, Principal Power, Does I-X]

69.     Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as if fully set forth herein.

70.     Superintendent Smyer, Assistant Superintendent Miller, Principal Power, and Does I-X are persons as that term is used under 42 U.S.C. § 1983.

71.     Superintendent Smyer, Assistant Superintendent Miller, and Principal Power, in their individual capacity and as the final decision-making authority on behalf of BHS and the School District, were acting under the color of law when engaging in the actions set forth in paragraphs 43 through 57 above.

72.     Does I-X, in their individual capacity, were acting under the color of law when engaging in the actions set forth in paragraphs 43 through 57 above.

COMPLAINT AND DEMAND FOR JURY TRIAL - 11

73. The acts described in paragraphs 43 through 57 above by Superintendent Smyer, Assistant Superintendent Miller, Principal Power, and Does I-X, deprived Plaintiffs of their right to be free from retaliation for exercising their First Amendment rights under the United States Constitution.

74. The reservation of the right to take advantage of the district's grievance process— while otherwise agreeing to abide by the unconstitutional punishments and conditions imposed upon them by the administration—was a constitutionally protected activity that did not involve substantial disruption of or material interference with school activities.

75. Kicking plaintiffs of the cheer team for reserving their right to address their concerns through the School District's grievance process would chill a person of ordinary firmness from continuing to engage in the constitutionally protected activity.

76. The plaintiffs' act of reserving the right to use the district's grievance process was a substantial or motivating factor in the defendants' decision to kick plaintiffs off the cheer team.

77. Plaintiffs have suffered and will continue to suffer harm, including emotional distress and psychological damage and damage to their character and standing in the community, as a direct and proximate result of the defendants' acts, omissions, and deliberate indifference to their rights.

78. Plaintiffs' damages from such conduct included, but are not necessarily limited to, emotional distress and reputational harm, in an amount to be determined at trial.

79. Additionally, due to the wanton and outrageous conduct of defendants, and each of them, Plaintiffs asks that punitive damages be imposed against defendants Superintendent Smyer, Assistant Superintendent Miller, Principal Power, and Does I-X and the in amounts to be determined by the enlightened conscience of the jury.

COMPLAINT AND DEMAND FOR JURY TRIAL - 12

## COSTS AND ATTORNEY FEES

Plaintiffs' claims arise from violations of 42 U.S.C. § 1983.  As an action to enforce this provision and vindicate a violation of civil rights, Plaintiffs are entitled to an award of reasonable costs of suit and attorney fees in an amount deemed reasonable by this Court pursuant to 42 U.S.C. § 1988 in the event she is the prevailing party.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues properly tried by a jury in the above-entitled matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

a.      Monetary damages to fairly and reasonably compensate plaintiffs for the deprivation of their rights, including compensatory (including for recovery of cheerleading related expenses, emotional distress, and reputational harm), consequential, and presumed damages;

b.      That punitive damages be imposed against Defendants in their organizational and individual capacities according to proof;

c.      For costs of suit, including reasonable attorneys' fees, which amount shall be twenty-five thousand dollars ($25,000.00) should this matter be uncontested;

d.      A declaration that defendants violated plaintiffs' constitutional rights;

e.      Any other appropriate injunctive or declaratory relief; and

f.      For such other and further relief as this Court deems just and equitable.

DATED this 26th day of February, 2018.

FISHER RAINEY HUDSON

/s/ Jeremiah Hudson
Jeremiah M. Hudson – Of the Firm
*Attorney for Plaintiffs*

COMPLAINT AND DEMAND FOR JURY TRIAL - 14