## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JORGE GONZALES on behalf of his minor child A.G., TODD MERRELL, on behalf of his minor child A.M.; MANUEL MORALES and VERONICA MORALES on behalf of their minor child Z.M.; HENRY MUNOZ and MISTY MUNOZ on behalf of their minor child I.M.; ERASMO SALAZAR and ELLEN SALAZAR on behalf of their minor children C.S. and S.S.; ROBERT SANCHEZ and TIFFINY SANCHEZ on behalf of their minor child I.S.; SILVIA OCHOA on behalf of her minor child D.O.; SONIA RAMIREZ on behalf of her minor child V.R., | Case No. 4:18-cv-00092-DCN **MEMORANDUM DECISION AND ORDER** |

                 Plaintiffs,

       v.

BURLEY HIGH SCHOOL; CASSIA JOINT SCHOOL DISTRICT 151; GALEN SMYER in his official and individual capacity; SANDRA MILLER in her official and individual capacity; LEVI POWER in his official and individual capacity; and DOES I-X,

                 Defendants.

## I. INTRODUCTION

Pending before the Court are Plaintiffs' Motion for Attorneys' Fees and Nontaxable Costs (Dkt. 46) and Motion to Supplement Attorneys' Fees (Dkt. 56). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately

presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons outlined below, the Court finds good cause to GRANT in PART and DENY in PART Plaintiffs' Motion for Attorneys' Fees and Nontaxable Costs (Dkt. 46). The Court awards initial attorneys' fees of $359,841.88, and costs of $8,631.90. The Court also finds good cause to GRANT in PART and DENY in PART Plaintiffs' Motion to Supplement Attorneys' Fees (Dkt. 56). The Court awards supplemental attorneys' fees of $19,918.75.

## II. BACKGROUND

The factual background of this case is outlined in detail in the Court's Memorandum Decision and Order Granting Partial Summary in favor of Plaintiffs (Dkt. 37) and will not be repeated here. In brief, Plaintiffs brought federal claims under 42 U.S.C. § 1983 to recover damages for the deprivation of their First Amendment rights. The Court granted partial summary judgment in Plaintiffs' favor, and the parties ultimately settled Plaintiffs' claims for damages.[1] Dkt. 37; Dkt. 45. Plaintiffs subsequently filed a Motion for Attorneys' Fees and Costs. Dkt. 46. In their motion, Plaintiffs sought a total of $399,290.15 which included attorneys' fees of $381,973.00 and non-taxable costs of $17,317.15 ("initial fee request"). Dkt. 46-1, at 17-18. Defendants objected, arguing that—for various reasons—the amount of fees and costs should be significantly reduced. Dkt. 51. In their Reply,

---

[1] The parties did not reach an agreement on the issue of attorneys' fees. Dkt. 45, at 2.

**MEMORANDUM DECISION AND ORDER - 2**

Plaintiffs voluntarily reduced the amount of attorneys' fees requested to $366,548.38 ("revised fee request") and the amount of costs requested to $11,181.90 ("revised cost request"). Dkt. 55. However, Defendants suggest Plaintiffs' fees should be much more substantially reduced. For instance, while Plaintiffs voluntarily reduced their attorneys' fees by over $15,000.00, Defendants suggest Plaintiffs' fees should be reduced by more than $100,000.00.[2] In addition, Defendants object to most of Plaintiffs' requested costs.

Plaintiffs also incurred fees subsequent to the fee calculation originally set forth in their initial Motion for Attorneys' Fees and Costs, and later submitted a Motion to Supplement Attorneys' Fees ("Motion to Supplement"). Dkt. 56. In their Motion to Supplement, Plaintiffs request an additional $20,904.75 in attorneys' fees ("supplemental fee request"). Dkt. 56, at 2. Defendants again object, arguing that the Court should exercise its discretion to reduce any "fees-on-fees" award and to disallow supplemental fees for non-attorney work performed by an attorney. Dkt. 57, at 3–4.

The motions have been fully briefed and are now ripe for review.

### III. LEGAL STANDARD

Generally speaking, each party to a lawsuit bears its own attorney's fees unless Congress has provided otherwise through statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). In actions under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the

---

[2] Based on two proposed fee reduction options, Defendants suggest Plaintiffs' initial fees should be reduced by between $92,652.50 and $118,896.90 for excessive time. Dkt. 51, at 18. Defendants also suggest Plaintiffs' fees should be further reduced to account for lower appropriate hourly rates for one of Plaintiffs' attorneys and for all three of their paralegals. Dkt. 51, at 5–6, 18 n. 18.

MEMORANDUM DECISION AND ORDER - 3

costs[.]" 42 U.S.C. § 1988(b). Section 1988(b) also provides the Court discretion to award "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citations omitted). "Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to judicial process." *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986). "In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case." *Id*. at 578.

Courts within the Ninth Circuit apply the "lodestar" approach to determine appropriate fee awards. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018). The lodestar amount is "calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* at 1160 (quoting *Hensley*, 461 U.S. at 433). "The product of this computation—the 'lodestar figure'—is a 'presumptively reasonable fee' under 42 U.S.C. § 1988." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).[3]

---

[3] The Court has discretion to adjust the lodestar figure upward or downward based on twelve factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). Although Kerr was abrogated on other grounds in 1992, the

**MEMORANDUM DECISION AND ORDER - 4**

The Ninth Circuit has emphasized that the lodestar amount is calculated by multiplying "the number of hours reasonably expended on the litigation by a *reasonable hourly rate.*" *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012) (per curiam) (alteration omitted) (emphasis added) (quoting *Hensley*, 461 U.S. at 433). In calculating the lodestar:

> [D]istrict courts "have a duty to ensure that claims for attorneys' fees are reasonable," *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993) (emphasis added), and a district court does not discharge that duty simply by taking at face value the word of the prevailing party's lawyer for the number of hours expended on the case. *Gates v. Deukmejian*, 987 F.2d 1392, 1398–99 (9th Cir. 1993). Rather, a district court must "ensure that the winning attorneys have exercised 'billing judgment.'" *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).

*Vogel*, 893 F.3d at 1160. Ultimately, the district court "must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 111 (9t Cir. 2008) (citations omitted). "The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Id.*

The prevailing party has the burden of submitting evidence to establish the claimed rates and hours expended on the litigation are reasonable. *Latta v. Otter*, 2014 WL 7245631 at *2 (D. Idaho Dec. 19, 2014). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy

---

Ninth Circuit continues to use the twelve *Kerr* factors when assessing attorneys' fee awards. *See, e.g.*, *Morales v. City of Rafael*, 96 F.3d 359, 364 (9th Cir. 1996) ("After making [the lodestar] computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation."); *Stranger v. China Electric Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016).

**MEMORANDUM DECISION AND ORDER - 5**

and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397–98.

With these principles in mind, the Court turns to Plaintiffs' fee request.

## IV. ANALYSIS

Defendants do not dispute that the Plaintiffs are the prevailing party in this case and that they are entitled to attorneys' fees and costs. Dkt. 51, at 2–3. Instead, for numerous reasons, Defendants challenge the amount of fees and costs Plaintiffs request.

### A. Motion for Attorneys' Fees and Costs (Dkt. 46)

#### 1. *Reasonable Rate*

Defendants first challenge the $225.00 hourly rate of one of Plaintiffs' attorneys—Angie Perkins—and also object to the rate of $140-$175 per hour charged by three of Plaintiffs' paralegals. Defendants suggest such rates are higher than the prevailing market rates in Boise, Idaho.[4] Defendants also note that Plaintiffs did not provide an affidavit from an attorney or paralegal of comparable skill, experience, and reputation to establish the prevailing market rate—for either Ms. Perkins or for Plaintiffs' paralegals—in southern Idaho.

Reasonable hourly rates "are to be calculated according to the prevailing market

---

[4] "[N]ormally, the relevant legal community for determining the prevailing market rates for attorneys' fees is the community in which the forum is situated." *Gates*, 987 F.2d at 1405. Although the events leading to this suit occurred in Burley, Idaho, and this case was accordingly filed in the eastern division of the District of Idaho, the attorneys for both Plaintiffs and Defendants live and practice in Boise, the southern division of the District of Idaho. Because the attorneys for both sides rely on reasonable market rates in Boise, rather than in eastern Idaho, the Court does so as well. *See, e.g.*, Dkt. 46-1, at 6–7; Dkt. 46-5, at ¶ 14; Dkt. 46-6, at ¶ 5; Dkt. 51, at 4 (agreeing that Plaintiffs' proposed Boise market rates for five of its six attorneys "are reasonable and consistent with the prevailing rates charged by other attorneys in this area.")

rates in the relevant community." *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). In determining a "reasonable hourly rate," "the critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate." *Blum*, 465 U.S. at 886 n. 11. Conclusory affidavits as to what constitutes a reasonable rate, even if from other attorneys working in the same area of law, are insufficient to establish the prevailing market rate. *See Widrig v. Apfel*, 140 F.3d 1207, 1209–10 (9th Cir. 1998). Instead, the fee applicant must "submit satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S., 895–96 n. 11.

a. <u>Ms. Perkins</u>

Defendants suggest Ms. Perkins' $225 hourly rate is unreasonable because Plaintiffs did not provide a sufficient affidavit declaring Ms. Perkins' rate was reasonable and comparable to other attorneys of similar experience and skill in Boise, Idaho. Defendants also argue that since Ms. Perkins has only been a licensed attorney for a little over three years, her market rate should be lower than comparably qualified attorneys in Boise. For example, another attorney who worked for Plaintiffs, Chris Brown, has been a licensed attorney for seven years, but also billed at a rate of $225 an hour. Defense counsel also notes that in a recent case, defense counsel was awarded attorneys' and paralegal fees in Bannock County. Dkt. 51, at 5 (citing *Spartan Irrigation v. Pocatello-Chubbuck Sch. Dist. No. 25*, CV-2017-2551 (2019) ("*Spartan*"); Dkt. 51-1, Ex. A. In *Spartan*, the state court determined $165 was a reasonable hourly rate for an associate. Dkt. 51-1, Ex. A, at 14 n.

11. Defendants ask the Court to similarly find $165 an hour is the appropriate prevailing market rate for Ms. Perkins.

Plaintiffs counter that they provided the Declaration of Angie Perkins in support of their Motion to Award Costs and Attorneys' Fees (Dkt. 46-4). The affidavit outlines Ms. Perkins' education and experience, and also provides information relating to her owning and operating Perkins Law, a litigation practice specializing in personal injury and civil rights cases. Plaintiffs note that they also submitted the declarations of Boise attorneys Newal Squyres and Howard Belodoff, each of whom have more than forty years of experience, to attest that each of Plaintiffs' attorneys' hourly rates—including that for Ms. Perkins—is "commensurate with the rates charged by attorneys . . . of comparable professional background and experience in southwest Idaho." Dkt. 55, at 2 (citing Dkt. 46-6; Dkt. 46-5). Plaintiffs also suggest that Mr. Brown's time has admittedly been undervalued and highlight that Defendants do not dispute the $250 hourly rate for another of Plaintiffs' attorneys, Anthony Shallatt, who has five years of experience. Finally, Plaintiffs note *Spartan*—the Bannock County case upon which Defendants rely—is inapposite because state law dictated the award of attorneys' fees in that case.

While the Court agrees with Plaintiffs that the decision by the state court in a completely unrelated matter—applying a different standard to a different client—does not control the Court's assessment of reasonable fees in this case, it also finds Ms. Perkins' requested rate of $225 is excessive. The declarations by Mr. Belodoff and Mr. Squyres simply conclude that the rates requested by Plaintiffs (for each attorney) are reasonable. Dkt. 46-5, at ¶ 14; Dkt. 46-6, at ¶ 5. However, to be reasonable, an hourly rate must be "in

**MEMORANDUM DECISION AND ORDER - 8**

line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S., 895–96 n. 11. The Court does not have sufficient information regarding Ms. Perkins' specific skill, experience, and reputation—when compared to similarly situated attorneys in Boise, Idaho—to approve the $225 an hour sought by Plaintiffs.

The Court has reviewed numerous recent fee awards issued by both the undersigned judge and other judges of this Court and finds a lower market rate for a relatively new associate like Ms. Perkins is more appropriate. *See*, *e.g., United States ex rel. Jacobs v. CDS*, *PA, et al*., 2018 WL 6268201, at *3 (D. Idaho Nov. 30, 2018), 4:14-cv-00301-BLW, at Dkt. 74; Dkt. 65-2, ¶ 14 (approving $175 an hour for an associate with three years of experience); *Fuller v. State of Idaho, Dep't of Corr.*, 2019 WL 6332850, at *5 (D. Idaho Nov. 26, 2019), 1:13-CV-00035-DCN, at Dkt. 164; Dkt 184 (approving $175 an hour for an associate with three years of experience); *Cayne et al. v. Washington Trust Bank et al*., 2018 WL 3939306, at *8 (D. Idaho Aug. 30, 2017), 2:12-cv-00584-REB, Dkt. 392-1; Dkt. 514 (approving $190 an hour for two associates, each with three years of experience); *Latta*, 2014 WL 7245631, at *6, 1:13-cv-00482-CWD (approving a $175 rate for staff attorney with five years of experience).[5]

Although this Court has typically approved between $175-190 an hour for associates

---

[5] Visiting Judge William B. Shubb approved a $225 an hour rate for an associate with four years of experience in a case cited by Plaintiffs, *Norton v. Maximus*, 2016 WL 6247004, at *4 (D. Idaho May 19, 2016), 1:14-30-WBS, Dkt. 141-2, at ¶ 17; Dkt. 188. However, Judge Shubb also noted that defendants in that case did not offer any evidence or cite any cases to contest the amounts requested by the plaintiffs. *Id.* at *2. By contrast, here, Defendants have offered evidence and legal authority to contest the hourly rates requested by Ms. Perkins and by Plaintiffs' three paralegals.

with between 3-5 years of experience, the Court also recognizes that Ms. Perkins had substantially more duties than a typical associate as the owner of her own law firm. Dkt. 46-4, ¶ 5; Dkt. 46-2, ¶ 29. The Court accordingly adjusts her hourly rate to the top end of the reasonable fee awarded for third to fifth year associates practicing in this market.

In sum, the Court reviewed the rates of the attorneys who participated in this case, which ranged from $225.00-$375.00 per hour. Dkt. 51, at 7; Dkt. 46-2, at ¶¶ 29–37. The Court has considered Ms. Perkins' experience, the supporting affidavits, and prior fee awards in the District of Idaho for similarly situated attorneys. After such review, the Court finds that a market rate of $190.00 an hour is reasonable for Ms. Perkins and will reduce the revised fee request accordingly. Adjusting Ms. Perkins' fee to $190 an hour results in a total reduction of $5,344.50 to the revised fee request.[6]

b. Paralegals

Defendants next challenge the hourly rates charged by three of Plaintiffs' paralegals, noting Plaintiffs did not provide an affidavit to establish that the claimed rates are reasonable and comparable to other paralegals in the Boise, Idaho area. Plaintiffs subsequently acknowledged their error in failing to provide information to distinguish

---

[6] The Court recognizes that Plaintiffs have already voluntarily reduced some of Ms. Perkins' entries by different percentages to account for certain objections by the Defendants. To the extent such reductions reduce Ms. Perkins' total hours of 152.7, the Court's additional reduction may not reflect the reduced hours ultimately billed by Ms. Perkins in the revised fee request. However, because Plaintiffs have not identified the total amount of hours billed for each timekeeper in the revised fee request, the Court declines to undertake the complicated accounting process required to calculate the exact amount owed for Ms. Perkins hours at the Court's reduced rate. *Fox v. Vice*, 563 U.S. 826, 838 (2011) (noting judges "need not, and indeed, should not," moonlight in accountancy to resolve fee petitions). The same is true of the Court's reduction to Plaintiffs' paralegals' fees. The reduction is an approximation based on the hours submitted in Plaintiffs' initial fee request. As the Supreme Court has held, the Court may "take into account [its] overall sense of a suit, and may use estimates in calculating and allocating attorney's time." *Id.*

between their paralegals' respective backgrounds and experience and reduced the hourly rate requested for each paralegal. Dkt. 55, at 3.

The rates of the paralegals who participated in this case initially ranged from $140-175 per hour. Dkt. 51, at 7. For three paralegals, Plaintiffs reduced this range to $110-150 an hour in their Reply brief. Specifically, Plaintiffs reduced the requested hourly rate for paralegals Steffanie Ochoa and Olivia Ford, both whom had less experience than paralegal Clare Thibeau, from $150 to $110 an hour. Plaintiffs also reduced the hourly rate for Ms. Thibeau from $175 to $150 an hour. Although Plaintiffs do not identify how many years of experience Ms. Thibeau has as a paralegal, they note that Judge Shubb approved an hourly rate of $150 an hour for Ms. Thibeau four years ago, in *Norton v. Maximus*, 2016 WL 6247004, at 8–9. Dkt. 55, at 3. However, as noted, *supra*, note 5, opposing counsel did not provide any legal authority or evidence to dispute the fees requested in *Norton*. As such, the Court is not convinced $150 is an appropriate hourly rate for Ms. Thibeau in this case, where Defendants do object with evidence and legal authority.

Defendants suggest an appropriate hourly rate for paralegals is $85 an hour, again citing *Spartan*, wherein they were awarded $85 an hour for paralegals. In awarding $85 an hour for paralegal time in *Spartan*, the Bannock County state court judge explained:

> The Court, in the exercise of its discretion, will reduce the hourly rate of Ms. Sotelo from $95.00 per hour to $85.00. The Court has considered numerous requests for paralegal fees, which includes not only practitioners from southeastern Idaho, but also Boise, Salt Lake City, Utah, and other locations. Although requests for paralegal fees are less common than requests for attorneys' fees, the rates the Court has seen presented normally range from $65.00 to $85.00 per hour. The Court will conclude that a reasonable rate for any paralegal services in this case and awarded to the School District is $85.00

Dkt. 51-1, Ex. A, at 9 n. 12.

Although the state court's reasoning is not determinative, the Court finds Plaintiffs' requested rates for their paralegals are higher than those typically awarded by judges of the District of Idaho. For instance, in *Cayne*, *supra*, Magistrate Judge Ronald E. Bush found that a requested hourly rate of $115 was reasonable for a paralegal with sixteen years of experience. 2018 WL 3939306, at *7, 2:12-cv-00584-REB, Dkt. 392-2, at 7; Dkt. 514, at 15. The undersigned Judge approved an hourly rate of $120 for a paralegal with 5.5 years of experience in *Fuller*, 2019 WL 6332850, at *3, 1:13-cv-00025-DCN, Dkt. 164, at 6; Dkt. 184. In affirming a fee award issued by the United States Bankruptcy Court for the District of Idaho, Judge Edward J. Lodge determined an hourly rate of $100 was regularly approved for paralegals in civil matters in the District of Idaho. *In re Hopkins Northwest Fund LLC*, 567 B.R. 590, 596 (D. Idaho 2017).

In their Reply brief, Plaintiffs note that Ms. Ford was a paralegal with Plaintiffs' counsel's firm for three years, and Ms. Ochoa was a paralegal with the firm for five years. Plaintiffs do not state how many years of experience either paralegal had in total, and do not identify how many years of experience Ms. Thibeau has as a paralegal. However, Ms. Thibeau presumably has more experience than Ms. Ford and Ms. Ochoa, since Plaintiffs seek a higher hourly rate for her.

In the absence of evidence regarding the specific experience of each paralegal, and without an affidavit from paralegals of comparable skill and experience, the Court determines Plaintiffs' requested paralegal rates are excessive. Consistent with its decision

**MEMORANDUM DECISION AND ORDER - 12**

in *Fuller*, the Court finds an hourly rate of $120 an hour for Ms. Thibeau is reasonable and in line with the prevailing market rate in Boise. 2019 WL 6332860, at *5; 1:13-cv-00025-DCN, Dkt. 164, at 6. Consistent with *In re Hopkins*, the Court finds an hourly rate of $100 an hour for Ms. Ford and Ms. Ochoa is reasonable and regularly approved for paralegals in civil matters in the District of Idaho. 567 B.R. at 596.

The Court's adjusted rates for the fees of all three paralegals results in a reduction of $1,362.00 to the revised fee request.[7]

### 2. *Reasonable Hours*

Plaintiffs submitted a claim for fees based upon 1,251.2 hours of attorney time and 105 hours of paralegal time. Dkt. 51, at 7. Defendants respond that the time expended by the attorneys and paralegals should be subject to an appropriate reduction for time which was spent on improper billing issues, such as duplicate entries, block billing, excessive hours, redundant and unnecessary hours, inadequate descriptions, and hours related to secretarial tasks.

As mentioned, Plaintiffs have the burden to submit appropriate and accurate time records to support their claims for fees. *See Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986). Determining the number of hours reasonably expended requires "considering whether, in light of the circumstances, the time could reasonably have been

---

[7] Plaintiffs already voluntarily reduced their paralegals' fees by a total of $3,516.00. Dkt. 55, at 3. The difference between the hourly rates the Court awards for the respective time expended by Ms. Ford, Ms. Ochoa, and Ms. Thibeau, and those sought in the revised fee request, is a total of $1,362.00. This reduction is an approximation of the appropriate fee award for the paralegals based on the total hours submitted in the initial fee request, and does not take into account the paralegal hours Plaintiffs' voluntary reductions may have eliminated in the revised fee request. *See*, *supra*, note 6.

**MEMORANDUM DECISION AND ORDER - 13**

billed to a private client." *Vargas*, 949 F.3d at 1194 (quoting *Moreno*, 534 F.3d at 1111 (9th Cir. 2008)). Claimed hours "may be reduced by the court where documentation of the hours is inadequate, if the case was overstaffed and hours are duplicated, [or] if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers*, 796 F.2d at 1210.

    a.  <u>Block billing</u>

Although, in response to Defendants' objections, Plaintiffs reduced certain time entries by a total of $4,085.70 to account for block-billing, Defendants seek a total reduction of $7,538.40 for purportedly block-billed entries. *Compare* Dkt. 55, at 4 *with* Dkt. 51, at 8–9. Block-billing is "'the time-keeping method by which each lawyer . . . enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 945 n. 2 (9th Cir. 2007) (quoting *Harold Stores, Inc. v. Dillard Dep't Stores, Inc*., 82 F.3d 1533, 1554 n. 15 (10th Cir. 1996)). Block-billing is disfavored because it "obscures the time spent on discrete legal tasks, frustrating the Court's analysis of whether time was reasonably spent." *Latta*, 2014 WL 7245631, at \*10 (citing *Welch*, 480 F.3d at 948). The Court may reduce the requested fee based on this lack of specificity. *Id*.; *see also Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000) (explaining district courts may reduce hours when requests are poorly documented).

In addition to the 35-entries Plaintiffs voluntarily reduced because they agreed such entries were improperly blocked billed, Defendants identify a number of additional entries that they claim should also be reduced by 20%. *Compare*, Dkt. 51-1, Ex. B, *with* Dkt. 55-2, Ex. A. Plaintiffs counter that the other alleged block-billed entries should not be reduced

because they contain enough detail to allow "the [c]ourt to assess the reasonableness of the hours billed." Dkt. 55, at 5 (citing *Deocampo v. Potts*, 2014 WL 788429, at *4 (E.D. Cal. Feb. 25, 2014)). The Court agrees with Plaintiffs. The entries Defendants claim are block-billed provide enough detail and specification to adequately identify the tasks for which such time was billed.

For example, Defendants suggest billing entry 247 is inappropriately block-billed. Dkt. 51-1, Ex. B, at 24. This entry is for .20 hours spent by paralegal Stephanie Ochoa, and states: "Called and left VM for Deanna Merrell; call to Tiffiny Sanchez; call to Sherry Jacobia." *Id*. This is sufficient detail for Defendants (and the Court) to infer that the entry was for three phone calls. Twelve minutes is an entirely reasonable time to spend on three phone calls, even if one of the three calls resulted in a voicemail rather than a discussion.

Additional entries Defendants object to are also sufficiently explained by reference to other entries. For instance, Defendants object to entry 270, which is for 7.7 hours spent by attorney Vaughn Fisher on July 3, 2018. *Id*. This entry provides: "Prepare for, travel to and attend meeting with clients and their parents about potential resolution and case strategy." *Id*. Although, taken alone, this entry may be insufficient to allow the Court to assess the reasonableness of the hours billed, the entry is explained by reference to entry 266, attorney Jeremiah Hudson's entry for the same date, for 7.5 hours, which notes: "Drive to Burley, Meet with Clients (2.2), and drive home." *Id*. When reading the two entries together, it is clear Mr. Fisher's entry is also for approximately 5 hours of travel time and 2.5 hours spent meeting with the Plaintiffs.

"Basing the attorneys' fee award in part on reconstructed records developed by

reference to litigation files and other awards is not an abuse of discretion." *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992), *vacated in part on other grounds in Davis v. City and Cty. of San Francisco*, 984 F.2d 345 (9th Cir. 1993). The Court declines to reduce Plaintiffs' fees for block-billed entries where such entries are adequately explained in reference to other entries.

Additional "block-billed" entries to which Defendants object contain a single specific task. For example, entry 114 for Ms. Ochoa is for 1.7 hours, and provides: "Review client documentation, create log of key persons involved." Dkt. 51-1, Ex. B at 21. Similarly, entry 633 is for .60 spend by Mr. Fisher to "[c]onfer with [Mr. Hudson] about strategy for responding to Offer of Judgment, including requesting the offer be individualized; Discuss changing tax consequences for civil rights cases and potential solutions." *Id.* at 32. Entries such as these that represent time spent on a single task are adequately detailed, are not block-billed, and are permissible.

The Court has compared the entries to which Defendant objects with those Plaintiffs contend are alone, or in conjunction with other entries, sufficiently detailed. The Court agrees with Plaintiffs that the "block-billed" entries are sufficiently detailed to give an accurate sense of the tasks performed. While the Court will reduce the initial fee request by $4,085.70 to account for the entries that Plaintiffs concede were improperly block-billed, the Court will not further reduce the revised fee request for purportedly block-billed entries.

### b. Vague and Inadequate Descriptions

Defendants next seek a reduction of $4,870.50 to account for vague or inadequate

descriptions in various time entries. Dkt. 51, at 9. Defendants suggest a number of entries should be disallowed because the work being performed is inadequately identified. *Id*. (citing *Hensley*, 461 U.S. at 433).

While Plaintiffs concede a reduction of $742.50 is warranted to account for three entries that are vague and inadequate, they contend that the rest of the entries in question can be corroborated by either other time-keepers, or by other entries. Dkt. 55, at 8; Dkt. 55-2, Ex. A (deducting for entries 43, 142, and 830 because they are admittedly vague). Again, the Court must agree.

For instance, Defendants object to entries 225 and 227 as vague, presumably because they reference calls Mr. Hudson made on June 19, 2018, to various plaintiffs, but do not identify the purpose of the calls. Dkt. 51-1, Ex. B, at 23. However, entries 223, 224, 226, 228, and 229 specifically state that Mr. Hudson called other plaintiffs on the same day to discuss case strategy. *Id*. It is apparent from reading such entries together that each of the calls made by Mr. Hudson on June 19, 2018, was to discuss case strategy with the various Plaintiffs.

Similarly, entries 708, 713, and 715 for paralegal Olivia Ford are for .5, .7. and 1.00 hours spent organizing discovery between December 20 and December 27, 2018. *Id*. at 34. Although initially potentially vague, when read in context with Mr. Hudson's entry on December 21, 2018, which provides "[c]ontinue reviewing defendant's 2nd discovery production," it is clear that Ms. Ford must also have been organizing Defendants' second discovery production.

When read in context with other entries (which Plaintiffs painstakingly identified in

**MEMORANDUM DECISION AND ORDER - 17**

their Reply), the Court finds Plaintiffs' entries are sufficiently detailed for the Court to assess the reasonableness of the fees. *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995) (upholding fee award where the "cumulative effect" of Plaintiffs' time records allowed the Court to assess the reasonableness of Plaintiffs' time). While the Court will reduce the initial fee request by $742.50 to account for the three entries that both parties agree were impermissibly vague, it will not further reduce the revised fee request for the entries Defendants claim are vague and inadequate.

### c.   Clerical Tasks

Defendants also suggest that any time spent on what were essentially clerical or secretarial tasks should be disallowed. Dkt. 51, at 10. Defendants identify a total of $1,471.00 worth of clerical time that should be deducted from the fee award. *Id*. While Plaintiffs dispute that all of the identified entries are clerical or secretarial, they agreed to forgo collecting the aforementioned amount in the interest of time and page limits. Dkt. 55, at 8. The Court will accordingly deduct $1,471.00 billed for clerical tasks from the initial fee request, but will not further reduce the revised fee request to account for clerical tasks.

### d.   Unreasonable hours

Defendants argue that the fee award should be substantially reduced to account for unreasonable expenditures. Hours that were not "reasonably expended" should be excluded from the fee award. *Hensley,* 461 U.S. at 434. This includes hours that are excessive, redundant, or otherwise unnecessary. *Id.*

#### i.   *Excessive Entries*

Defendants outline numerous entries that purportedly represent an excessive

**MEMORANDUM DECISION AND ORDER - 18**

amount of time spent on the case. The tasks include what Defendants contend was an excessive amount of time spent preparing the Complaint (84.7 hours); briefing Plaintiffs' Motion for Partial Summary Judgment, responding to Defendants' Motion for Summary Judgment, and preparing for the summary judgment hearing (210.3 total hours); and preparing Plaintiffs' mediation statement (37 hours). Dkt. 51, at 11.[8] Defendants ask the Court to reduce this time by 20% (a $19,865.60 reduction) *or* by limiting Jeremiah Hudson's time to equate to 1.5 hours per page for each document that he drafted (a $46,110.00 reduction).[9] Dkt. 51, at 12.

Plaintiffs respond that it "would have been illogical and unethical for Plaintiffs' attorneys to engage in tasks in this manner under the assumption that they would be paid by Defendants for doing so." Dkt. 55, at 9. Plaintiffs' counsel additionally argue that they "would have preferred to work on other fee-paying matters to pay their overhead and personal expenses when they were incurred rather than getting paid for excessive, unnecessary, duplicative, or redundant tasks more than two and a half years later—if ever." *Id.* Plaintiffs' counsel also note that they would not presume that the Court would award attorney fees for excessive billing. Plaintiffs' counsel highlight that they have already

---

[8] Defendants also note that Plaintiffs' counsel spent over 200 hours on this case before the Complaint was even filed. *Id.* at 11. Defendants do not seek a reduction of pre-filing fees on the basis that they were excessive because many of these fees already fall under other categories for which Defendants seek a reduction (such as block-billing, secretarial tasks, etc.). Dkt. 51, at 11 n. 5. While Defendants note that the Court has discretion to reduce the 207.1 hours in pre-filing expenses as it sees fit, the Court declines to do so. Plaintiffs have adequately documented the extensive time they spent preparing to file this case, and the Court finds such time was reasonable.

[9] With respect to the briefing and hearing on the parties' respective motions for summary judgment, Defendants only seek a reduction of Mr. Hudson's time, and do not seek a reduction for additional time other lawyers and paralegals spent on such tasks. Dkt. 51, at 11 n. 8.

voluntarily reduced their requested fee by a significant amount, as they would similarly adjust bills for paying clients. Finally, Plaintiffs' counsel suggest that it is unfair for Defense counsel to second guess whether Plaintiffs' counsels' time was used wisely while, at the same time, Plaintiffs' counsel lacks access to any of the billing records or time spent by Defense counsel to determine whether the amount of time defense counsel spent was comparable.

Plaintiffs' arguments are well taken. In *Moreno,* the Ninth Circuit explained: "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." 534 F.3d at 1112. As noted, Defendants do not contest that Plaintiffs are the prevailing party in this case. Moreover, detailed time records for each of Plaintiffs' attorneys and paralegals support Plaintiffs' request for the fees Defendants deem excessive. Mr. Hudson—the primary attorney and biller on this case—has attested that the significant amount of time spent on this case was necessary due to the complex aspects of First Amendment and § 1983 litigation involved (including litigating the issue of qualified immunity), the twenty-one Plaintiffs represented in the case (including nine minors and twelve parents, all whom had varying opinions about litigation strategy), and responding to unique positions the Defendants took throughout the case. *See generally*, Dkt. 46-2. Moreover, Plaintiffs' counsel navigated such issues without receiving compensation and without any guarantee that they would ever be paid for their time.

Other than suggesting 1.5 hours is an appropriate amount of time to spend on each page of briefing (without accounting for the significant time required for researching and

**MEMORANDUM DECISION AND ORDER - 20**

analyzing applicable law prior to putting pen to paper), Defendants offer no evidence to support targeted reductions for specific tasks performed by Plaintiffs' legal team. Nor do Defendants proffer the time that they devoted to responding to the Complaint, briefing the summary judgment motions, appearing for oral argument, or preparing for mediation. There is thus no clear explanation to support either of Defendants' proposed fee reduction options.

Further, the hours Plaintiffs' counsel expended on certain tasks appears reasonable when compared with other cases in this Court. For example, Magistrate Judge Mikel H. Williams approved over 150 hours for one attorney's time to prepare for oral argument in *Hash v. United States*, 2012 WL 1252624, at *14–16 (D. Idaho Apr. 13, 2012); *see also Nadarajah v. Holder*, 569 F.3d 906, 924–25 (9th Cir. 2009) (finding 40 hours of preparation for oral argument to be reasonable). Here, Plaintiffs' counsel seeks compensation for 38.3 hours spent preparing for a 40-minute summary judgment hearing.

In addition, the time Plaintiffs' counsel spent on summary judgment ultimately proved successful. Defendants did not prevail on any of the substantive issues they raised pertaining to either Plaintiffs' or Defendants' Summary Judgment Motions.[10] As Mr. Hudson notes, "there was no event more significant to the outcome of this lawsuit than Plaintiffs prevailing on Summary Judgment on Claim Two of Plaintiffs' Complaint— which is exactly what plaintiffs did." Dkt. 55, at 11.

---

[10] Although the Court dismissed individual Defendants Smyer and Miller in its summary judgment order, Plaintiffs' counsel readily conceded that such dismissal was proper in their Response to Defendants' Motion for Summary Judgment. *See* Dkt. 37, at 29. As such, the Court does not consider Defendants to have "prevailed" on this limited issue.

MEMORANDUM DECISION AND ORDER - 21

The Court's "discretion to reduce claimed hours is not unbounded, nor does it provide an opportunity for second-guessing when counsel exercises sound billing judgment." *Latta*, 2014 WL 7245631, at *6. Moreover, lawyers "are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning." *Moreno*, 534 F.3d at 1112.

In sum, the Court has scrutinized the time Plaintiffs' counsel spent on each of the tasks that Defendants deem excessive, and finds such time was reasonable. The Court will not further reduce the revised fee request to account for allegedly excessive time.

ii. *Unnecessary Work*

Defendants next argue that the fee award should be reduced for time that involved "unnecessary work." Dkt. 51, at 13. Defendants specifically challenge the 205.9 hours Plaintiffs' counsel spent between October 18, 2017, and February 26, 2018 (the date the Complaint was filed), as well as the time spent preparing for trial after the Court's order on summary judgment, as unnecessary. With respect to the former, Defendants suggest "preparing for and attending school board meetings," "communications with parents regarding transferring their child to another school," and "entries that pertained to minors that were not even a party to the action" were excessive and unnecessary fees. Dkt. 51, at 12. With respect to the latter, Defendants characterize "researching and creating a private YouTube account," and preparing for trial while settlement negotiations "were ensuing," as unnecessary. *Id.* at 12–13.

**MEMORANDUM DECISION AND ORDER - 22**

Plaintiffs respond that the time counsel spent prior to filing the Complaint was a necessary attempt to avoid litigation, and, once it was clear a lawsuit was imminent, to evaluate the facts and litigation strategy. Specifically, through preparing for and attending school board meetings, Plaintiffs' counsel attempted to overturn the school district's decision to dismiss the nine minor plaintiffs from Burley High School's cheerleading team. Had Plaintiffs' counsel been successful in such efforts, this action would not have been filed.

Having evaluated the time Plaintiffs' counsel spent on preparing for and attending school board meetings, the Court finds such time to be reasonable. Avoiding litigation all together is obviously preferable to the time, stress, and expense associated with lawsuits. Denying fees for Plaintiffs' counsels' efforts to resolve the relevant issues prior to filing suit would send the message that attorneys in civil rights cases should avoid attempts to compromise and proceed immediately to litigation in order to receive compensation. The Court declines to convey such an improvident implication.

In addition, Plaintiffs explain "communications with parents regarding transferring their child to another school" were made in order to assess potential retaliation and other claims resulting from one of the Plaintiffs' involvement in the sit-in protest, and to answer questions and advise another Plaintiff on the impacts that transferring to another school would have on the lawsuit. Dkt. 55, at 13. Plaintiffs also note that entries pertaining to minors who were not a party to this action involved communicating with other witnesses (such as the cheerleaders who were not dismissed from the cheerleading team) about the details of the events leading to this suit. *Id*. at 10. Clearly, counsel must communicate with

**MEMORANDUM DECISION AND ORDER - 23**

clients and witnesses in order to develop a case and craft a litigation strategy. The Court finds spending time on such avenues is reasonable and necessary for any attorney prior to filing suit.

With respect to trial preparation efforts, Plaintiffs explain that YouTube was researched as a means to convey an impact video to Defendants prior to the Settlement Conference. Dkt. 55, at 12 n. 8. Plaintiffs ultimately "decided against YouTube due to questions around the ability to password protect the video, and Plaintiffs' counsel's desire to not subject Plaintiffs to further ridicule by peers and/or other teachers." *Id.* The Court has scoured Defendants' objections to Plaintiffs' billing records and it appears that Defendants object to a total of .6 hours Ms. Ford spent researching YouTube. Dkt. 51-1, Ex. B, at 27 (entry 382) and 28 (entry 423). Even before the reduction the Court and Plaintiffs' have applied to Ms. Ford's hourly rate, this represents $90.00 (with the Court's deduction, it is $60.00).

Although the Court understands Defendants' desire to reduce their total obligation to Plaintiffs' counsel by objecting to every single entry that appears unreasonable, the Court is not going to question the less than 45-minutes Plaintiffs' paralegal spent researching a means to present information to defense counsel. The "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838.

Defendants also object to time Plaintiffs' counsel spent after the Court's summary judgment order as unnecessary because settlement negotiations were already underway. However, as Plaintiffs note, three days after the Court's summary judgment order,

**MEMORANDUM DECISION AND ORDER - 24**

mediation failed. *Id.* at 12. The Court subsequently set trial for April 13, 2020. Dkt. 43. Given the logistical challenges associated with representing twenty-one Plaintiffs from Burley, while having an office in Boise and attending trial in Pocatello, Plaintiffs' counsel spent a little less than nine hours in November 2019 preparing for trial. Dkt. 46-2, Ex. B, at 71 (entries 1090, 1107–1109). The parties did not notify the Court that the case had settled until February 19, 2020. Dkt. 45. Although the Court is unaware of the exact date the case settled, it appears entirely reasonable to spend the equivalent of one-work day preparing for trial before a settlement was actually agreed to, particularly given the complicated logistics of trying this case.

In sum, the Court finds the time Plaintiffs' counsel spent prior to filing for summary judgment, as well as after the Court's order granting summary judgment was entered, to be necessary and reasonable. As such, the Court will not reduce the revised fee award for work Defendants characterize as unnecessary.

### iii. Duplicative Efforts

Defendants next argue that the fee award should be reduced by an additional $36,442.00 for time that involved "duplicative work" by Plaintiffs' counsel and their staff. Dkt. 51, at 13. Defendants suggest Plaintiffs should not recover fees for tasks, meetings, travel, and other activities for which multiple attorneys and paralegals billed.

Generally speaking, two professionals cannot bill for merely *attending* the same meetings, hearings, depositions, etc. *HRPT Properties Trust v. Lingle,* 775 F.Supp.2d 1225, 1240 (D. Haw. 2011). However, more than one professional can bill when they not only attend but *participate* in such events. *Id.* at 1241. ("[T]he attendance of hearings,

conferences, and depositions by multiple attorneys is duplicative with respect to the attorney(s) who merely attend, and do not participate.") In other words, more than one professional can bill for their participation in the same meetings, hearings, and depositions.

Defendants first object to a meeting two attorneys and three paralegals attended at the beginning of the case, before the Complaint was filed. Dkt. 46-4, Ex. B, at 47 (entries 48–53). As the aforementioned entries detail, the meeting was held to discuss case strategy, communication with clients, administration of the case, and to delegate which individual would be responsible for specific tasks. *Id*. Because it appears that the participation of each attorney and paralegal was necessary in order to accomplish such tasks, the Court does not find such time to be duplicative.

Defendants next object to a January 26, 2018 meeting Plaintiffs' counsel had with the Plaintiffs. *Id*. at 48, entries 75–88. The same three paralegals and two attorneys attended the meeting. As Plaintiffs note, Defendants "fail to address the fact that Plaintiffs' counsel represented 21 Plaintiffs, and, at times, the logistics of doing so required more than a single attorney to bear that burden." Dkt. 55, at 13. It appears reasonable for five professionals to allocate the duties of meeting with and responding to questions from twenty-one Plaintiffs—a ratio of approximately 4:1. The Court does not find such time duplicative.

Defendants next object to a meeting two attorneys had with Plaintiffs to discuss potential resolution and case strategy on July 3, 2018. Dkt. 46-4, Ex. B, at 52 (entries 266 and 270). With so many Plaintiffs, it is frankly unreasonable to suggest that less than the two attorneys who held the aforementioned meeting should be permitted to bill for such time.

**MEMORANDUM DECISION AND ORDER - 26**

The Court similarly so finds with respect to other time entries to which Defendants object, including a pre-settlement conference that three attorneys had with Plaintiffs on October 9, 2018 (*Id*. at 56–57 entries 455, 457, 465); the settlement conference the same three attorneys participated in on October 10, 2018 (*Id*. at 57, entries 469, 471, 474); and the mediation the same three attorneys handled on July 30, 2019. It would be unreasonable to expect one—or even two—attorneys to answer a variety of client questions, develop settlement strategy, gain client consensus on various counteroffers, or address substantive legal questions from the settlement conference judge or mediator during such conferences and hearings. The Court does not find such time duplicative.

Defendants also suggest it was duplicative for two attorneys to prepare for, travel to and from, and defend, the depositions of the nine minor Plaintiffs between November 6 and November 8, 2018. *Id*. at 46-2, at 60 (entries 609–622). Defendants do not present any evidence to suggest that either attorney merely attended, and did not participate in, the nine depositions. Nor is it unreasonable to think one attorney would be needed for preparation and research, as well as to answer the minor Plaintiffs' questions while their co-Plaintiffs were being deposed, while the other attorney defended the depositions. The Court does not find such time duplicative.[11]

Finally, Defendants object to time two attorneys spent between August 12, 2019, and September 9, 2019, on strategizing for trial and meeting with clients to discuss trial

---

[11] Defendants also object to a strategy meeting between three attorneys in April, 2019. *Id*. at 65 (entries 843 and 847). The Court notes that although three attorneys were present for the meeting, only two billed time for it. Plaintiffs' most expensive biller, attorney Vaughn Fisher, did not. *Id*. Billing two hours for three hours of attorney time is not unreasonable.

strategy. *Id.* at 69 (entries 974, 976, 980, 995, 996, 1002, 1014, 1016). One of the aforementioned entries is not duplicative because only Ms. Perkins billed for it. *Id.* (entry 1002).[12] The other entries are not duplicative because it is entirely reasonable to expect more than one attorney to strategize for trial.

Expecting one attorney to shoulder the burden of trial strategy in a case involving complex issues of constitutional law and twenty-one Plaintiffs is unreasonable. After reviewing the entries Defendants identify as duplicative, the Court finds that such fees were reasonable. The Court will not further reduce the revised fee request for purportedly duplicative entries.

      *iv.*    *Redundant Entries*

Defendants next contend that the fee award should also be reduced to account for "redundant entries" by counsel and their staff. Dkt. 51, at 14. Specifically, Defendants argue Plaintiffs' preparation of an "impact" video, wherein the nine minor Plaintiffs talked about how being dismissed from the cheerleading team impacted them, was redundant since such Plaintiffs were also present for the settlement conference and explained how they had all been impacted at that time. *Id.* Defendants also note it is questionable whether the "impact" video would have been admissible at trial, had one occurred. *Id.* at 15 (citing *Thompson v. TRW Auto. U.S., LLC*, 2014 WL 2612271, at *1 (D. Nev. June 11, 2014)). Defendants seek a reduction of $15,678.50 to account for approximately 60 hours in

---

[12] Two entries are duplicative because Ms. Perkins billed twice for the same meeting. Dkt. 55-2, at 32 (entries 974, 976). However, Plaintiffs recognized the error and already reduced the revised fee request to account for it. *Id.*

**MEMORANDUM DECISION AND ORDER - 28**

attorney and paralegal time spent making the impact video. Dkt. 51, at 15.

Plaintiffs respond that the impact video was not made for the settlement conference but was instead created to send to Defendants *beforehand* to avoid wasting multiple hours of the single-day settlement conference for nine Plaintiffs to explain the emotional distress Defendants had caused them. Plaintiffs also suggest the video was made to avoid exposing Plaintiffs "to the in-person derision or dismissiveness that Plaintiffs anticipated from Defendants, which, in Plaintiffs' counsel's professional opinion, would likely have undermined any attempts to settle the case." Dkt. 55, at 15. Finally, Plaintiffs suggest the video served an additional purpose of allowing their counsel to interview them about the impact that Defendants' conduct had, so counsel could zealously advocate for Plaintiffs' damages throughout this case. Despite this, after reviewing the entries, Plaintiffs' counsel recalled inefficiencies in making the video, and agreed to reduce the initial fee request by $5,678.50. *Id.*

Hours that are redundant are hours that were not reasonably expended and should be excluded from the Plaintiffs' initial calculation of their fees. *Hensley,* 461 U.S. at 433. When determining the number of hours to be used to calculate the lodestar, the Court should exclude those "hours that were not reasonably expended." *Id.* at 434 (internal quotation marks and citation omitted). In addition, the party seeking fees "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* The Court finds Plaintiffs' counsel has made such a good faith effort. They have voluntarily reduced the amount requested for the impact

video by 33%. In addition, the video served more interests than the single "redundant" purpose Defendants identify. As such, it would be inequitable to eliminate Plaintiffs' ability to recover for the video entirely. The Court will not further reduce the revised fee request to account for the impact video.

### 3. Out of Pocket Expenses and Costs

Defendants also object to various alleged out-of-pocket expenses Plaintiffs seek to recover, arguing such costs are not recoverable. Federal Rule of Civil Procedure 54(d) "generally provides for an award of costs to the prevailing party. A Rule 54(d)(1) award includes taxable costs, and a Rule 54(d)(2) award of attorney's fees may include 'nontaxable expenses.'" *Gomez v. Reinke*, 2008 WL 3200794, at *16 (D. Idaho Aug. 7, 2008). Under 42 U.S.C. § 1988, the prevailing party "may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee-paying client.'" *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). The party seeking an award of fees or cost under § 1988 has the burden of submitting evidence and documentation necessary to support their claims. *Hensley*, 461 U.S. at 433.

Defendants first object to costs for which Plaintiffs did not submit a receipt and/or bill. Dkt. 51, at 16 (citing *Johnson v. Borbeau*, 2017 WL 6379605, at *3 (E.D. Cal. Dec, 8, 2017)) (denying costs where plaintiff failed to provide receipts or bills to verify the amounts claimed). Defendants suggest that all of Plaintiffs' out-of-pocket costs, with the exception of taxable cost allowed under 28 U.S.C. § 1920, should be disallowed. However, Plaintiffs' counsel does not dispute that they should have included invoices and

**MEMORANDUM DECISION AND ORDER - 30**

supplemented their request for costs by submitting most of the missing invoices with their Reply brief. Dkt. 55, at 16; Dkt. 55-3, Ex. B. The Court finds eliminating Plaintiffs' costs entirely would be inequitable in light of their belated submission of invoices for most of their costs.

To the extent the Court declines, as it has, to disallow essentially all of Plaintiffs' costs, Defendants seek a reduction of $6,135.25 to account for expert witness fees. Defendants correctly note that expert witness expenses are not permitted in § 1983 actions. *See, e.g., Ruff v. Cty. of Kings*, 700 F. Supp. 2d 1225, 1243 (E.D. Cal. 2010) (finding no authority to permit an award of expert witness fees in a § 1983 action pursuant to § 1988); *Agster v. Maricopa Cty.*, 486 F. Supp. 2d 1005, 1019 (D. Ariz. 2007) (explaining that § 1988 "conveys no authority to shift expert fees in civil rights cases to the losing party"). Plaintiffs agree that expert witness fees are not recoverable and withdrew their request for $6,135.25 in expert witness fees. This amount has already been deducted from the revised cost request.

Defendants also object to the $2,550.00 fee spent on the videographer for Impact Videos. Although the Court has determined the time spent making the video was not unreasonable or redundant, and has approved Plaintiffs' (reduced) fee request for making the video, it finds the videographer's fee is akin to an expense spent on an expert witness. Plaintiffs have not cited any authority to permit recovery of such an expense, and the Court declines to award it. The Court will reduce the revised costs request by an additional $2,550.00.

Defendants also object to $123.12 for a hotel in Burley, and $46.39 for gas to

**MEMORANDUM DECISION AND ORDER - 31**

Burley. Defendants suggest such expenses were unnecessary because they were incurred to attend the School Board hearing that occurred on October 19, 2017, several months before the Complaint was filed. As explained above, the Court finds expenses Plaintiffs' counsel incurred in attempting to avoid litigation are reasonable. The Court accordingly declines to reduce Plaintiffs' costs for the Burley hotel and gas to Burley.

In addition, Defendants object to a $173.60 hotel bill for April 11, 2019. Defendants suggest this cost should be denied because the Plaintiffs failed to present documentation establishing that this cost was reasonably incurred. However, Plaintiffs explain that the bill was for a conference room Plaintiffs rented for an April 17, 2019 meeting with Plaintiffs to discuss summary judgment and case status. Dkt. 55, at 17. This explanation is supported by the billing entries for Plaintiffs' counsel on April 17, 2019. Dkt. 55-2, at 28 (entries 849 and 850). The Court finds the conference room expense is sufficiently supported and is recoverable.

Finally, Defendants suggest Plaintiffs should not be permitted to recover costs for their $1,600 share of the mediation fees. Defense counsel does not cite any authority for this position, but notes that each party agreed to pay their own respective share of the mediation fees. Dkt. 51-1, Ex. C and Ex. D. However, as Plaintiffs note, § 1988 allows the prevailing party to recover those out-of-pocket expenses that "would normally be charged to a fee-paying client." *Dang*, 422 F.3d at 814. As such, another Judge of this Court has previously held that out-of-pocket expenses, including mediation fees, "are recoverable when reasonable." *Newman v. City of Payette*, 2016 WL 1611430, at *5 (D. Idaho 2016). The parties have agreed that the total $3200.00 charged by the mediator was reasonable,

and the Court finds it is appropriate for Plaintiffs to recover their share of this fee.

### B. Motion to Supplement (Dkt. 56)

Plaintiffs seek an additional $20,904.75 in fees for time spent subsequent to the fee calculation set forth in Plaintiffs' Motion to Award Costs and Fees. Such fees represent 61.3 hours Mr. Hudson's time, and 16.2 hours of Ms. Perkins' time. Dkt. 56, at 2. The time is related to litigating the issue of fees, finalizing three of the Plaintiffs' Minors' Compromises, and legal work related to distributing the settlement to Plaintiffs. *See generally* Dkt. 56-1. In order to account for any errors or objections to their supplemental fee request, Plaintiffs voluntarily discounted the actual total of such time ($22,005.00) by 5% ($1,100.25), resulting in the $20,904.75 request. Dkt. 56, at 2. In addition, Plaintiffs voluntarily deducted 1.5 hours worked by Mr. Fisher, 1.4 hours worked by paralegal Carman Conrad, and .6 hours worked by Ms. Thibeau. *Id.*

The Ninth Circuit has held that the "legal principles for recovering attorney's fees" set forth by the Supreme Court in *Hensley*, 461 U.S. at 440, "apply to requests for fees-on-fees." In addition, Plaintiffs "are entitled to compensation for the merits work they completed after they filed . . . their fee application." *Cruz v. Alhambra Sch. Dist.*, 282 F. App'x 578, 582 (9th Cir. 2008). The Court may, in its discretion, use a formula to reduce a fees-on-fees award, and can also award a fees-on-fees award in the same ratio that the merits fee was awarded. *Schwarz v. Sec. of Health & Human Services*, 73 F.3d 895, 905 (9th Cir. 1995) (citation omitted). The Court may also reduce or eliminate fees-on-fees awards where the prevailing party's counsel fails to minimize the hours spent in preparing the fee petition, delegate tasks that could have been performed by associates at a lower rate,

MEMORANDUM DECISION AND ORDER - 33

or present all documents relevant to the fee petition with the initial motion. *Schneider v. Cty. of San Diego*, 32 Fed. App'x 877, 880 (9th Cir. 2002).

Defendants suggest Plaintiffs' supplemental award should be reduced to account for any corresponding reductions in Plaintiffs' initial fee award. For instance, because the Court determined Ms. Perkins should be billed at an hourly rate of $190, rather than $225, the 16.2 hours she spent after the fee petition should also be reduced to account for this change. In their Reply brief, Plaintiffs agree that such a reduction is appropriate. Dkt. 58, at 2. The Court will accordingly reduce the supplemental fee request by $567.00 (the difference between 16.2 x 225 and 16.2 x 190).

Defendants also argue 14.8 hours of Mr. Hudson's time, and 1.3 hours of Ms. Perkins' time, should be subtracted from the supplemental fee request as inappropriate "fees-on-fees" because such time was spent preparing the Reply in support of Plaintiffs' Motion for Attorneys' Fees and Costs. Dkt. 57, at 4; Dkt. 57-2. Said another way, Defendants contend Plaintiffs should not recover for time they spent unsuccessfully defending their fee request. While there is no way for the Court—or counsel for either party—to accurately determine exactly how much time Plaintiffs' counsel spent defending the small changes (appropriate hourly rates for Ms. Perkins and the paralegals) that the Court made to the revised fee award, such changes represent an approximate 2% reduction to the revised fee request. The Court will accordingly reduce the supplemental fee request by 2%, or by $419.

While Defendants were also successful on the videographer fee issue, Plaintiffs already voluntarily reduced their supplemental fee request by 5% ($1,100.25), and also

**MEMORANDUM DECISION AND ORDER - 34**

voluntarily deducted two hours of paralegal time. At Mr. Fisher's hourly rate of $375, Ms. Thibeau's revised hourly rate of $120, and a $100 hourly rate for Ms. Conrad, this represents an additional $774.50 Plaintiffs have voluntarily deducted from their supplemental fee request. This is more than enough of a reduction to account for the likely minimal time Plaintiffs' spent defending the videographer fee request.

Finally, Defendants object to $720.00 in fees Mr. Hudson spent preparing settlement statements. Defendants suggest such tasks could have been delegated to a paralegal with a lower hourly rate. However, Mr. Hudson explains:

> [S]ettlement statements are letters to each client explaining the amount each client is receiving pursuant to the settlement. The settlement statement includes any deductions and reimbursements to the settlement amount received by the client pursuant to the legal services agreement between the attorneys and the clients. These deductions and reimbursements include attorneys' fees, costs incurred by attorneys, and reimbursement of prepaid costs by the client. . . This necessitates a heightened level of precision from the person who will be subjected to [inquiry by the Idaho State Bar] should an accounting error occur. To delegate this task to a paralegal would require enough oversight by Plaintiffs' counsel to constitute unnecessary duplicative work.

Dkt. 58, at 2.

The Court agrees and will not further reduce the supplemental fee request to account for time spent preparing settlement statements.

## V. CONCLUSION

The Court finds that the *Kerr* factors support the reasonableness of the lodestar calculation in this case. Presumably, the lodestar amount reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation. *Intel Corp. v. Terabyte Intern.,*

*Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). This case involved the Constitutional rights of multiple plaintiffs and unconstitutional retaliation by the Defendants. As stated in the Court's decision on summary judgment: "As the Supreme Court emphasized in *Tinker*, 'vigilant protection of constitutional freedom is nowhere more vital than in the community of American schools. The classroom is peculiarly the 'marketplace of ideas.' The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth 'out of a multitude of tongues' (rather) than through any kind of authoritative selection.'" Dkt. 37, at 14 (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 512 (1969)). Vigilant protection applies to an award of attorney fees in this type of case. The lodestar calculation will not be reduced any further than as set forth above.

## VI. ORDER

NOW, THEREFORE, the Court HEREBY ORDERS:

1. Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Costs (Dkt. 46) is **GRANTED** in **PART** and **DENIED** in **PART**;

   a. It is **DENIED** with respect to the requested $225 hourly rate for Ms. Perkins, and various requested hourly rates for Plaintiffs' paralegals. The Court finds Ms. Perkins' experience and the prevailing market rate in the relevant community supports a $190 hourly rate. Similarly, the Court finds a reduced hourly rate of $120 for Ms. Thibeau, and $100 for both Ms. Ford and Ms. Ochoa, is the prevailing market rate for paralegals of similar experience in the relevant community. The Court has reduced the revised fee request accordingly;

    b.  The Motion is also **DENIED** with respect to Plaintiffs' request for $2,550.00 in videographer fees. The Court has reduced the revised cost request accordingly;

    c.  The Motion is **GRANTED** in all other respects. Taking into account Plaintiffs' voluntary reductions to the initial fee and cost request, as well as the Court's nominal deductions to the revised fee and cost request, Plaintiffs are awarded **$359,841.88** in attorneys' fees and $**8,631.90** in costs.

2.  Plaintiffs' Motion for Supplemental Fees (Dkt. 56) is **GRANTED** in **PART** and **DENIED** in **PART**;

    a.  Plaintiffs' Motion for Supplemental Fees is **DENIED** to the extent it seeks compensation for 16.2 hours of Ms. Perkins' time at $225 an hour. Because the Court has determined $190 an hour is the appropriate hourly rate for Ms. Perkins, it will reduce the supplemental fee request by an additional $567.00 to reflect the difference in Ms. Perkins' appropriate hourly rate;

    b.  Plaintiffs' Motion for Supplemental Fees is also **DENIED** to the extent it requests fees for defending the fees the Court has determined were appropriately reduced. To account for such fees, the Court reduces the supplemental fee request by an additional 2%, or by $419.00;

///

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 37**

c.  Taking into account the aforementioned deductions, Plaintiffs' supplemental

fee request is reduced by a total of $986.00.

d.  Plaintiffs are awarded a total of **$19,918.75** in supplemental attorneys' fees.

DATED: November 30, 2020

David C. Nye
Chief U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 38**